**UNITED STATES of America**

v.

**Lonnie DAWSON, a/k/a "Abdul Salim", William Roy Hoskins, a/k/a "Muhammad Waliyud-Din", Robert Hardwick, a/k/a "Fareed Abdul Shakoor".**

Cr. No. 82–00128–01 to 82–00128–03.

United States District Court, E.D. Pennsylvania.

Dec. 21, 1982.

Peter F. Vaira, U.S. Atty., Robert E. Welsh, Jr., Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Daniel M. Preminger, Philadelphia, Pa., for Lonnie Dawson.

F. Emmett Fitzpatrick, Jr., Philadelphia, Pa., for William Roy Hoskins.

Gilbert J. Scutti, Philadelphia, Pa., for Robert Hardwick.

## MEMORANDUM OPINION

BECHTLE, District Judge.

Presently before the Court are the posttrial motions of defendants Lonnie Dawson ("Dawson"), William Roy Hoskins ("Hoskins") and Robert Hardwick ("Hardwick") for judgment of acquittal, arrest of judgment and new trial, pursuant to Fed.R. Crim.P. 29, 33 and 34. After a careful and exhaustive examination of the relevant statutes, decisional law, the record, and arguments of counsel, both in their briefs and at oral argument, the motions were denied by the Court's Order dated December 13,

1982, and the within Memorandum Opinion is in support thereof.[1]

## I. *Facts*

This case concerns an alleged drug organization operated and headed by defendants Dawson, Hoskins and Hardwick from February, 1981, until April 5, 1982, in the Philadelphia area. Defendants were arrested on April 5, 1982, by the Drug Enforcement Administration ("DEA") and the Federal Bureau of Investigation ("FBI"), after defendants unsuccessfully attempted to kill Lawrence D. Simons ("Simons"), a confidential informant, who was cooperating with and providing information to federal authorities about defendants' drug organization.

On April 14, 1982, the grand jury returned an indictment which charged the defendants with four counts: obstruction of justice, conspiracy to violate civil rights, accessory after the fact, and the use of a firearm to commit a felony. On June 23, 1982, a superseding indictment was returned by the same grand jury which listed twenty-two individual counts.

Count One charged defendants Dawson, Hoskins and Hardwick with conspiracy to distribute heroin and cocaine, narcotic controlled substances, and to manufacture and distribute methamphetamine, a non-narcotic controlled substance in violation of 21 U.S.C. § 846. Count Two charged defendants Dawson and Hoskins with operating a continuing criminal enterprise in violation of 21 U.S.C. § 848. Count Three charged defendant Dawson with known possession of methamphetamine in violation of 21 U.S.C. § 844(a). Counts Four, Five and Six charged defendants Dawson and Hoskins with the intentional distribution of heroin on three separate occasions in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a). Count Seven charged defendant Dawson with the intentional distribution of cocaine and Count Eight charged Dawson with the

intentional distribution of methamphetamine, both in violation of 21 U.S.C. § 841(a)(1). Thereafter, Counts Nine through Eighteen, a total of ten counts, charged defendants Dawson, Hoskins and Hardwick in separate counts on different occasions with the intentional use of a communication facility to facilitate the conspiracy to distribute controlled substances in violation of 21 U.S.C. § 843(b). Finally, Counts Nineteen through Twenty-Two restated the charges in the initial indictment and charged the defendants with substantive counts relating to their attempt on Simons' life. Count Nineteen charged defendants Dawson and Hardwick with obstruction of justice in violation of 18 U.S.C. § 1510. Count Twenty charged defendants Dawson, Hoskins and Hardwick with conspiracy to deprive Simons of his civil rights in violation of 18 U.S.C. § 241. Count Twenty-One charged defendant Hoskins with being an accessory after the fact in violation of 18 U.S.C. §§ 1510 and 3, and Count Twenty-Two charged defendants Dawson and Hardwick with the use of a firearm to commit a felony in violation of 18 U.S.C. § 924(c)(1).

On October 12, 1982, following numerous pretrial hearings and proceedings, a jury was empaneled and trial began. The evidence may be briefly summarized as follows. The government's first witness, Simons, gave testimony on the details of the drug organization operated by defendants Dawson, Hoskins and Hardwick from February, 1981, to April 5, 1982, and the attempt on his life by defendants on April 5, 1982. Consensual body recordings in which defendants Dawson and Hoskins discussed the manufacture and distribution of controlled substances with informant Simons on six separate occasions were heard by the jury and admitted into evidence. *See* Consensual Body Recordings (NAGRA), Transcripts, C–3(t), C–4(t), C–5(t), C–6(t), C–

---

**1.** Kenneth Shank was also named in Counts One and Twenty of the indictment and proceeded to trial as a defendant. However, the Court granted a motion for acquittal under Fed.R. Crim.P. 29(a) with respect to Count One and

declared a mistrial following a poll of the jury with respect to Count Twenty as to defendant Shank. For these reasons, no post-trial motions have been filed.

7(t), C–8(t), and C–9(t). These consensual body recordings, as well as other testimony and evidence, independently corroborated the testimony of Simons with respect to the drug conspiracy, continuing criminal enterprise, and individual distributions of controlled substances in violation of the Drug Abuse Prevention and Control Act, 21 U.S.C. §§ 801–966. Wiretapped conversations of defendants Dawson, Hoskins and Hardwick were also admitted into evidence as the result of intercepts of telephone conversations during August and September, 1981, and March and April, 1982, by federal officials pursuant to court authorization. *See* Wiretap Conversations (August/September 1981), Transcripts, W–1(t) to W–21(t); Wiretap Conversations (March/April 1982), Transcripts, W–22(t) to W–44(t). This evidence formed the basis for the substantive counts under Counts Nine through Eighteen of the indictment for the unlawful use of a communication facility to facilitate drug law violations and further corroborated the testimony of Simons with respect to the activities of the drug organization. Finally, various witnesses testified and numerous exhibits were introduced with respect to the attempted shooting of Simons as an informant on April 5, 1982, while Simons was driving home from the airport area in Philadelphia to Chester, Pennsylvania, on Interstate 95. Substantive evidence on this issue was presented in the form of wiretapped conversations of defendants Dawson and Hoskins in which the conspiracy to eliminate Simons was both discussed and planned. *See* Wiretap Conversations (April 5, 1982), Transcripts, W–47(t) to W–59(t).

After almost three weeks of trial, the jury returned its verdict on October 29, 1982. *See* N.T. 14–1 to 14–64a. The foreperson of the jury announced that the jury was in agreement on all counts, except Count Three, with respect to each defendant. The Court accepted the verdict which was as follows:

Dawson—guilty as to Counts 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 16, 19, 20, 22;

Hoskins—guilty as to Counts 1, 2, 4, 5, 6, 15, 18, 20, 21;

Hardwick—guilty as to Counts 1, 12, 13, 19, 20, 22.

Thereafter, the jury was individually polled. Following the polling, it was readily apparent that the jurors were not unanimous with respect to their verdicts on Counts Three (Dawson), Seven (Dawson) and Twenty-Two (Dawson and Hardwick). The Court declared a mistrial with respect to Counts Three, Seven and Twenty-Two and recorded the jury's verdict.[2]

## II. Post-Trial Motions of Defendants Dawson, Hoskins and Hardwick

Many of the issues now raised by defendants in their post-trial motions have been extensively addressed and ruled upon by the Court at trial. Nevertheless, the Court will address each of the issues which were either listed or argued to the Court as a ground for a judgment of acquittal, arrest of judgment or new trial.

### A. Excusal of Juror Number Eleven

Defendants assert that the Court improperly excused juror number eleven as one of the selected jurors during trial. This contention is without merit. Juror number eleven was excused from jury service because the juror explained to the Court at sidebar in the presence of all counsel that having heard the opening statements, he realized he knew of the case, and that he could not be both fair and impartial in hearing the evidence since he could not return a verdict of guilty no matter what the evidence presented. N.T. 1–4 to 1–7. Under Federal Rule of Criminal Procedure 24(c), the Court is authorized to "replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." Fed.R.Crim.P. 24(c). A trial judge, in his sound discretion, may remove a juror and replace him or her with

---

**2.** The jury was also unable to reach a unanimous verdict with respect to defendant Shank on Count Twenty and the Court declared a mistrial on Count Twenty only with respect to defendant Shank.

an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to fairly and impartially decide the case is impaired. *United States v. Cameron,* 464 F.2d 333, 335 (3d Cir.1972). In the present case, sufficient facts were adduced from the juror himself, both through his examination by the Court and counsel at sidebar, to allow the Court to exercise its discretion and replace that juror with an alternate juror. N.T. 1–4 to 1–17.

## B. Expert Testimony of Special Agent Richard Compton

Defendants contend that the Court erred in allowing Agent Compton to testify as an expert witness specifically concerning the use of drug words and drug prices. This contention is without merit. Federal Rule of Evidence 702 provides that an opinion may be offered if the specialized knowledge of the witness "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Expert testimony is readily admissible if the witness is qualified to render an opinion as an expert and if such an opinion would assist the trier of fact. *Id.* In line with this rule, expert testimony is readily admissible to interpret and explain the use of code words and the meaning of certain language used in drug trafficking. *United States v. Smith,* 519 F.2d 516, 521 (9th Cir.1975); *United States v. Cirillo,* 499 F.2d 872, 881 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974); *United States v. Borrone-Iglar,* 468 F.2d 419, 421 (2d Cir.1972).

In the present case, sufficient evidence was introduced to qualify Agent Compton as an expert on drug terminology in the Philadelphia area. Compton's training, knowledge and experience in investigating drug trafficking in this vicinity adequately qualified him as such an expert. Second, the opinions testified to by Agent Compton of the meaning of certain code words were admissible in order to assist the jury in understanding the consensual body recordings and wiretap evidence. The Court instructed the jury that it was not bound by

Agent Compton's opinions but that it need only consider those opinions as well as the other evidence presented in the case in determining whether the government met its burden of proof. Thus, the Court did not commit error in allowing Agent Compton to give his opinion on the use of code words for drugs. Nor did the Court err in allowing expert testimony by Agent Compton with respect to the value of certain drugs. Again, the Court was satisfied that Agent Compton possessed sufficient training, knowledge and experience through his investigative work of drug trafficking in the Philadelphia area to render an opinion on the market value of certain illegal drugs. This testimony assisted the jury in determining whether defendants obtained a substantial income through the operations of the drug organization.

## C. Testimony Concerning "Spanish"

Defendants contend that the Court erred in denying a motion for mistrial and a motion to strike when Simons testified about an October, 1981, meeting between himself, defendants Dawson and Hoskins, and one Carmen Garcia, a/k/a "Spanish," a co-conspirator. The Court disagrees. Simons testified that during the meeting "Spanish" told defendants that she had been subpoenaed before a grand jury to testify about their drug organization and that defendants told "Spanish" to lie to the grand jury.

This evidence was admissible on several grounds. First, the evidence was relevant to show that Dawson and Hoskins were aware of an ongoing grand jury investigation of their drug organization approximately seven months prior to April 5, 1982, when they attempted to kill Simons upon learning that he was part of that investigation. Second, the evidence was probative with respect to the issue of whether there was an ongoing criminal drug conspiracy. Third, the evidence was probative with respect to the issue of whether, by directing a member of the alleged organization to withhold information from federal authorities, defendants Dawson and Hoskins main-

**424**

tained positions of supervisory power in the drug organization which was the subject of the continuing criminal enterprise count.

**D. Evidence Seized at 4619 Hutchinson Street and 704 West Rockland Street**

■ Defendants contend that the Court erred in allowing the admission of testimony concerning searches executed pursuant to search warrants on September 12, 1981, at 4619 Hutchinson Street and 704 West Rockland Street and the fruits of these searches including large quantities of heroin, drug paraphernalia, and cutting agents used to stretch heroin. Defendants' contention is without merit. Sufficient evidence was introduced to connect these locations to the overall heroin operation conducted by defendants Dawson and Hoskins. These cutting houses were under the immediate supervision of Michael Johnson who was established through independent evidence consisting of the testimony of Simons and the intercepted telephone conversations between Johnson and defendants prior to September 12, 1982, to be a member of the conspiracy before the execution of the search warrants. *See e.g.* Wiretap Conversations (August/September, 1981); W–2(t) to W–8(t); W–10(t) to W–18(t); W–20(t).

**E. Evidence Seized at Mr. Silk's on April 9, 1982**

■ Defendants contend that the Court erred in allowing testimony concerning samples of methamphetamine found on the upper floors of Mr. Silk's, a bar on 52nd and Spruce Streets in Philadelphia, Pennsylvania, pursuant to a search warrant executed on April 9, 1982. Defendants contend that this evidence was inadmissible because it was obtained after the alleged conspiracy had ended on April 5, 1982, as a result of defendants' arrest. Defendants' contention is without merit. This evidence was admissible because it corroborated Simons' testimony that he received methamphetamine from defendant Dawson on April 5, 1982, which Dawson himself had obtained earlier that evening from Charles Broadnax out of a cash register on the second floor of Mr.

Silk's. This evidence is probative to show that the methamphetamine did exist as Simons described it several days earlier.

**F. Evidence of Two 55 Gallon Drums of Methylamine**

■ Defendants contend that the Court erred in denying the motion to strike the testimony of Agent William Glantz who testified as to his observations concerning the purchase of two 55 gallon drums alleged to contain methylamine which were picked up in Wilmington, Delaware, in March, 1981. Defendants' contention is without merit. This evidence was directly probative of the conspiracy to manufacture and distribute methamphetamine as well as of the existence of a continuing criminal enterprise. Methylamine is an essential ingredient for the manufacture of methamphetamine and Agent Compton identified Dawson as one of the persons who picked up the drums. The connection of Dawson with the drums supports the above charges and it was not error to allow the testimony to stand. Moreover, no error was committed when the Court allowed testimony with respect to the amount of methamphetamine which could be manufactured from such a large quantity of methylamine and its potential value on the illegal drug market. This evidence was readily admissible with respect to the issue of whether defendants Dawson and Hoskins received a substantial income through the operation of a drug organization under the continuing criminal enterprise count.

**G. Continuing Criminal Enterprise**

■ Defendants Dawson and Hoskins assert that there was insufficient evidence from which a jury could find that defendants were engaged in a continuing criminal enterprise in violation of 21 U.S.C. § 848, and thus have moved for judgment of acquittal on Count Two of the indictment. In ruling on a motion for a judgment of acquittal under Fed.R.Crim.P. 29(c), the Court must view the evidence in the light most favorable to the government and resolve all reasonable inferences in its favor. *Glasser*

*v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). It is not the function of the Court to weigh the evidence or to determine the credibility of the witnesses. A jury's verdict must be sustained if there is substantial evidence to support it. *Id.* In the present case, the evidence sufficiently established that defendants Dawson and Hoskins engaged in a continuing series of violations of the Drug Abuse Prevention and Control Act, 21 U.S.C. § 801 *et seq.,* that these violations were undertaken by Dawson and Hoskins in concert with five or more other persons with respect to whom Dawson and Hoskins occupied a position of management, and that Dawson and Hoskins obtained substantial income from the continuing series of violations. Voluminous testimony was submitted on the operations of the drug network established and managed by Dawson and Hoskins. For example, abundant evidence was presented connecting defendant Hardwick and co-conspirator Michael Johnson with the organization as lieutenants. *See e.g.* Wiretap Conversations, W–1(t) to W–5(t), W–8(t), W–13(t), W–15(t). Additional evidence established that the organization included local workers involved in purchasing and cutting the controlled substances in "cut houses" and in distributing the end product on the street level. Sufficient evidence was introduced to show that the drug operation was large in scale and that Dawson and Hoskins obtained a substantial income by virtue of their management positions. In sum, substantial evidence exists in the record to support each of the elements of 21 U.S.C. § 848 with respect to each defendant as required for a conviction. For this reason each of the motions for judgment of acquittal on Count Two must be denied.

**H. Cross-Examination of Character Witnesses**

■ Defendant Hoskins contends that the Court erred in ruling that the government could cross-examine character witnesses regarding their knowledge of his murder conviction because that conviction had been reversed upon appeal. This contention is without merit. A conviction known to the community is no different than an arrest and both have been held to be a proper subject for inquiry on cross-examination of a character witness. *Michelson v. United States,* 335 U.S. 469, 482–483, 69 S.Ct. 213, 221–222, 93 L.Ed. 168 (1948). If a defendant wishes to introduce character evidence in support of his defense, the government has every right to test the basis for the reputation testified to by the witness and the credibility of the witness to bespeak the community opinion. *Id.*

**J. Testimony of Police Officer Anna Law**

■ Defendant Hardwick contends that the Court erred in allowing Philadelphia Police Officer Anna Law to testify that she found four bags of methamphetamine on or near defendant Hardwick's person on February 10, 1982, while Hardwick was driving a car used by defendant Dawson (the same car that Hardwick and Dawson were driving on April 5, 1982, a white Oldsmobile 98). The methamphetamine in question was thrown out the window when the police officer attempted to apprehend Hardwick and another individual in the car. Hardwick asserts that admission of this evidence was improper because the government failed to lay an adequate foundation to connect the methamphetamine to him. Defendant's argument is without merit. Prior evidence, consisting of Simon's testimony and the wiretap conversations, laid a sufficient foundation for introduction of Law's testimony. Prior testimony showed that Hardwick participated in the manufacture and distribution of methamphetamine as part of the drug conspiracy. The evidence that Hardwick possessed methamphetamine in a car used in furtherance of the conspiracy was probative of Hardwick's membership in the conspiracy. For these reasons, the Court did not err in the admission of this testimony.

**K. Identification Testimony of Doris Demko**

■ Defendant Hardwick contends that the Court erred in allowing testimony regarding an out-of-court identification of

him made by Doris Demko, a waitress at the Howard Johnson's Restaurant located in Chester, Pennsylvania, since she was unable to identify him in the courtroom. This contention is without merit. Ms. Demko testified without hesitation that two black men came into her restaurant between 3:00 and 4:00 A.M. on April 5, 1982, and asked to use the telephone. In Court, Ms. Demko identified Dawson as one of the two men. Admittedly, Ms. Demko was unable to identify Hardwick as the other man after searching the courtroom. This, however, does not preclude her prior out-of-court identification of him since she was able to identify, in Court, the photograph of the other man which she had picked out on April 12, 1982. This photograph was that of defendant Hardwick. Under Fed.R.Evid. 801(d)(1)(C), such an identification procedure was proper and was not hearsay. *See United States v. Lewis,* 565 F.2d 1248, 1250–1252 (2d Cir. 1977) (similar identification procedure ruled admissible). Hardwick's arguments can only go to the weight of the evidence and not its admissibility.

### L. Circumstantial Evidence v. Direct Evidence

▇ Defendant Hardwick contends that the Court erred in instructing the jury that the law does not distinguish between direct and circumstantial evidence and that they should consider both. This contention is without merit. During closing arguments, counsel for Hardwick stated to the jury that circumstantial evidence may not be considered when direct evidence leads to a contrary conclusion. This statement of the law was clearly erroneous and was properly corrected by the Court. *See United States v. Ramirez-Rodriquez,* 552 F.2d 883 (9th Cir. 1977) (circumstantial and direct evidence are to be considered in the same manner). For this reason, the Court did not err in instructing the jury that it should consider both.

### M. Admission of Co-Conspirator Statements

▇ Without pinpointing specific instances, defendants generally contend that the Court erred in allowing the admission of certain hearsay co-conspirator statements. This contention is without merit. At the close of the government's case in chief, the Court exhaustively examined the evidence with respect to each of the defendants as alleged members of the conspiracy and made detailed individual findings. The Court found by a preponderance of the evidence, independent of any hearsay declarations or statements, that the conspiracy as outlined in the indictment existed and that each of the alleged co-conspirators were members of the conspiracy. *United States v. Continental Group, Inc.,* 603 F.2d 444, 456–457 (3d Cir.1979). For these reasons, no error was committed by the Court.

### N. Polling of the Jury and Recording of Verdict

▇ Finally, defendants contend that the Court erred in allowing any verdicts to be rendered after a poll of the jury indicating that the jury was unable to reach a unanimous verdict on Count Seven (Dawson), Count Twenty (Kenneth Shank), and Count Twenty-Two (Dawson and Hardwick). This contention is without merit. Prior to the polling of the jury, the jury informed the Court that it was not unanimous on Count Three (Dawson). All total, the jury was required to determine thirty-three separate counts. On five of these they were unable to reach a unanimous verdict. *See Verdict Forms Submitted to Jury.* Under Fed.R.Crim.P. 31(b), a partial verdict may be accepted in the Court's discretion if the jury has unanimously agreed on a verdict with respect to any defendant or individual count. *United States v. DiLapi,* 651 F.2d 140, 144–145 (2d Cir.1981); *United States v. Ross,* 626 F.2d 77, 81 (9th Cir.1980). Under Fed.R.Crim.P. 31(d), if a poll reveals that there is not unanimous concurrence with the announced verdict, the Court has the discretion to either discharge the jury or direct it to resume further deliberations. In the present case, the Court accepted the jury's verdict on those counts as to which there was unanimity, but declared a mistrial with respect to Counts

Three, Seven, and Twenty-Two. On Count Twenty, a mistrial was declared only with respect to defendant Kenneth Shank. In view of the above cited Federal Rules of Criminal Procedure, there was no error in the Court's partial acceptance of the verdict.

Defendants argue that the Court should have directed the jury to return to the jury room and resume deliberations with respect to each and every count. Defendants' contention is without merit since the law is clear that the Court, having properly recorded a partial verdict, could have directed the jury to resume further deliberations only with respect to such counts on which the jury did not reach agreement. *United States v. DiLapi, supra; United States v. Ross, supra.* The case of *United States v. Morris,* 612 F.2d 483 (10th Cir.1979), cited by defendants, is readily distinguishable from the present facts. In *Morris,* a juror voiced a not guilty vote with respect to one of five defendants during the poll of the jury in a prosecution of five defendants for violation of 18 U.S.C. § 1955, i.e., "conducting, financing, managing, supervising, directing or owning all or part of an illegal gambling business involving five persons or more." In that case, reconsideration of all verdicts was required due to the statutory requirement that the jury find five or more persons involved in the illegal gambling business, 18 U.S.C. § 1955(b)(1)(ii). *Id.* at 489–490. In the present case, no interrelationship existed between the verdicts returned by the jury and those counts on which the jury did not reach unanimity. Rather, the jury showed by its action that it heeded the Court's instructions and separately considered each defendant with respect to each count. For these reasons, no error was committed by the Court.

III. *Conclusion*

For all of the above reasons, all of the defendants' post-trial motions for a new trial, judgment of acquittal and motion for arrest of judgment were denied by the Court's Order dated December 13, 1982.

The foregoing Memorandum Opinion is in support of that Order.