653 A.2d 1249

**Patricia A. ALLEN and Robert C. Allen, H/W, Appellees,**

**v.**

**Robert J. KAPLAN, D.P.M., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 2, 1993.

Filed Jan. 31, 1995.

Alan S. Gold, Elkins Park, for appellant.

Yale F. Edeiken, Allentown, for appellees.

Before OLSZEWSKI, JOHNSON and HUDOCK, JJ.

HUDOCK, Judge:

This is an appeal from the order granting Appellees a new trial on the basis of negligence and informed consent. This matter was before us previously on appeal from an order disposing of post-trial motions. We remanded to the trial court for a complete disposition of post-trial motions which were only partially ruled upon prior to the earlier appeal, 433 Pa.Super. 647, 639 A.2d 835. The trial court has subsequently granted the new trial and denied Appellant's exceptions. We affirm.

This action for negligence and lack of informed consent was brought by Appellees following treatment provided to Mrs.

Allen for bunions. Initial surgery was performed by Appellant, and two subsequent surgeries were performed by other physicians. Mrs. Allen alleged that the surgery performed by Appellant was done negligently, and Appellant failed to obtain informed consent before performing the surgery. A jury trial was held and, at the conclusion, the jury returned a verdict in favor of Appellant, finding no negligence. The trial court then entered the verdict. Appellees filed post-trial motions which were granted, giving rise to the order for a new trial. The court then stated that its order would become final unless exceptions were filed within twenty days. Appellant filed exceptions, and, following a hearing on the exceptions, the court entered the order granting Appellees a new trial.

Appellant raises the following issues in his appeal:

1.  Does a plaintiff preserve his objection that an expert's report constitutes inadmissible hearsay when the plaintiff's counsel makes a specific objection on another ground never mentioning hearsay?

2.  Should a new trial be granted when an expert reads into evidence the report of a non-testifying expert upon which the testifying expert relied in reaching his opinion?

3.  Is a party entitled to a new trial based upon the admission into evidence of a report of a non-testifying expert that constituted hearsay when the party failed to show that the hearsay affected the outcome of the trial?

4.  Can a new trial be granted based upon the alleged misconduct of defense counsel concerning the availability of an expert to testify when it had no affect on the admissibility of the report or the verdict of the jury and when the evidence failed to show misconduct?

5.  Did the trial court err in granting a new trial on the issue of informed consent?

Appellant's Brief at p. 3.

Our standard of review for the grant of a new trial requires us to examine the reasoning of the court: absent manifest abuse of discretion or an error of law, we will not disturb the decision of the lower court.

*Carlson Mining Co. v. Titan Coal Co., Inc.,* 343 Pa.Super. 364, 366, 494 A.2d 1127, 1128 (1985) (citation omitted).

Appellant's first four issues concern the admission of testimony by Dr. Kieran T. Mahan. We will address them together. Dr. Mahan was called as an expert witness by the defense. Dr. Mahan testified on direct examination that he relied upon various reports prepared by other experts involved in the case. He stated that he did not agree with a number of those reports, and testified to the areas of those reports with which he disagreed. At one point during his testimony, he indicated that he reviewed two reports prepared by Dr. Vernick, an orthopedic surgeon. Dr. Mahan testified that he reviewed an initial report of Dr. Vernick. Dr. Vernick also prepared another report shortly before trial. Dr. Vernick's second report referred to the conclusions originally drawn by Dr. Mahan in response to Dr. Vernick's first report. Dr. Mahan stated that Appellant's conduct had not fallen below the standard of care required in this case. At trial, when Dr. Mahan was asked which reports he relied upon in forming his opinion testimony, he read into the record the contents of Dr. Vernick's second report. It is the only place in the record to which we have been guided which quotes from an expert's report. We also note that Dr. Mahan was not a treating physician, but, rather, was employed by Appellant for purposes of providing expert testimony.

The law in Pennsylvania is well-settled that a medical witness may "express opinion testimony on medical matters based, in the expert customarily relies upon in the practice of his profession." *Commonwealth v. Thomas,* 444 Pa. 436, 445, 282 A.2d 693, 698 (1971). In providing expert testimony, however, the expert witness may not act "as a mere conduit or transmitter of the content of an extrajudicial source." *Primavera v. Celotex Corp.,* 415 Pa.Super. 41, 52, 608 A.2d 515, 521 (1992), *alloc. den.,* 533 Pa. 641, 622 A.2d 1374 (1993).

In our case, Dr. Mahan testified at trial, relying upon numerous reports of treating physicians and plaintiffs' expert witnesses, including the two reports of Dr. Vernick.

After listing the reports upon which Dr. Mahan based his opinion, he stated with regard to the two reports by Dr. Vernick:

[DR. MAHAN]: It's a very brief report. Basically it says that, quote, "I believe that the patient's present complaints are secondary to excision of the second metatarsal head, with resultant deformity. My feeling is that the course of treatment, as rendered by Dr. Kaplan, was satisfactory. I'm in agreement with Dr. Kieran T. Mahan, in regard to his explanation pertaining to the functional impairment that the patient has in reference to her right foot." I think the significance is that this is an orthopedist, who is a member of an Orthopedic—of the Orthopedic Foot and Ankle Society, who is stating that there's not a deviation from the standard of care.

N.T., Direct Examination, Dr. Mahan, pp. 32–33. Shortly after he read the contents of Dr. Vernick's report, Dr. Mahan testified as follows:

[DR. MAHAN]: Well, in reviewing the—one of the reasons that I elected to take this case and review, was because I was so concerned with the types of reports that I saw. For example, a report by Dr. Shane, who is a pathologist, in my judgment, came to conclusions about foot surgery that he was not only inaccurate about, but really not qualified to be making those kinds of conclusions. Some of them also were factual errors regarding, for example, Dr. Flanigan's report where he indicated that the patient was not immobilized in a surgical shoe, when, in fact she was. Which would be the standard of care both for the hallux valgus surgery, the bunion surgery, and for the metatarsal surgery.

N.T., Direct Examination, Dr. Mahan, p. 36. It is clear when Dr. Mahan's testimony is read as a whole that a large portion of his testimony disagreed with and criticized the reports of the other doctors involved. Dr. Mahan's reading of Dr. Vernick's second report essentially bolsters Dr. Mahan's credibility because Dr. Vernick's report agreed with Dr. Mahan's findings. As we stated in *Cooper v. Burns,* 376 Pa.Super. 276, 289, 545 A.2d 935, 941 (1988), *alloc. den.,* 522 Pa. 619, 563 A.2d

888 (1989), "[b]y stating that [the reporting, non-testifying doctor] had confirmed [the testifying doctor's] diagnosis, [the testifying doctor] was permitted to corroborate his own medical opinion by improper hearsay. [The reporting doctor] was not subjected to cross-examination concerning his diagnosis, and the jury was not able to assess his credibility or his qualifications." We find that our present case is akin to *Cooper* because Dr. Mahan should not have been permitted to read into evidence that portion of Dr. Vernick's report which corroborated his opinion. Therefore, the trial court properly granted Appellees' motion for a new trial based on the improper admission of hearsay testimony not subject to an exception.[1]

■ Finally, we address Appellant's fifth issue, whether the trial court erred in granting Appellees a new trial on the informed consent issue. Appellant contends that Appellees have failed to claim any error in their post-trial motions to support granting a new trial on the informed consent issue. The record reveals that Appellees' post-trial motion, in item three (3), does raise the issue of error by the trial court in its ruling on the motion *in limine* concerning whether they would be permitted to examine Appellant on his conviction for writing improper prescriptions for controlled substances. In this issue, Appellees claim that Appellant's credibility was at issue on whether or not he properly obtained an informed consent

1.    Appellant asserts that Appellees failed to preserve their claim by an appropriate objection at trial. After reviewing the relevant portions of the transcript, we disagree. It is clear that the court was concerned, at the time the testimony regarding Dr. Vernick's report was raised, that Dr. Vernick's presence as a witness was at issue. It was Appellant's counsel's representations that he expected Dr. Vernick to testify that prompted the trial court to permit the testimony.

After it became apparent that Dr. Vernick would not testify, the court, in its discretion, found that the testimony given by Dr. Mahan, with reference to Dr. Vernick's report, unfairly prejudiced the verdict and, therefore, granted the motion for a new trial. We agree with this assessment because the credibility of the experts was crucial to the outcome of this case, given their conflicting testimony.

While we do not condone the actions of Appellant's counsel with regard to the whereabouts of Dr. Vernick, we express no opinion about whether Appellant's attorney committed misconduct in his representations before the court, as that does not effect our ultimate decision that the trial court permitted inadmissible hearsay.

from Mrs. Allen. Similarly, they claimed that whether Appellant had a substance abuse problem, with subsequent conviction, directly impacted on his ability to remember and testify completely about his business practices and records. Appellees further claimed that, without the ability to cross-examine Appellant on this conviction and the fact that he had surrendered his license to practice in New Jersey and Pennsylvania, the jury was left with the improper impression that Appellant was still a licensed podiatrist.

Essentially, the issue raised here is whether the conviction for a violation of 35 Pa.S. § 780–113(a)(13) [2] constitutes *crimen falsi* and is, therefore, admissible against Appellant as impeachment of his credibility. The rule of law in Pennsylvania concerning the admission of prior convictions as impeachment evidence in criminal cases is

> ... evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date. If a period greater than ten years has expired the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect.

**2.** This section reads as follows:

(13) The sale, dispensing, distribution, prescription or gift by any practitioner otherwise authorized by law so to do of any controlled substance to any person known to such practitioner to be or whom such practitioner has reason to know is a drug dependent person, unless said drug is prescribed, administered, dispensed or given, for the cure or treatment of some malady other than drug dependency, except that the council, in accordance with Federal narcotic and food and drug laws, shall allocate the responsibility for approving and designating certain clinics, and shall provide or allocate the responsibility for providing regulations for such clinics at which controlled substances, including but not limited to methadone, may be prescribed, administered or dispensed for the treatment of drug dependency. This clause shall not prohibit any practitioner from prescribing, distributing or dispensing any controlled substance for a period of time not to exceed fourteen days pending confirmed admission of the patient to a hospital or rehabilitation center.
35 P.S. § 780–113(a)(13).

*Commonwealth v. Randall,* 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987). In *Russell v. Hubicz,* 425 Pa.Super. 120, 624 A.2d 175 (1993), *alloc. den.,* 535 Pa. 670, 634 A.2d 1117, our Court held that the same rule applies to civil cases.[3] The trial court in our present case determined that the conviction here was not a crime involving dishonesty or false statement, but held that, in balancing the probative value against the prejudicial effect, the conviction was "far more inflammatory than probative." Trial Court Opinion, March 9, 1994, at p. 4. Consequently, the trial court reaffirmed its decision to grant Appellant's motion *in limine* and to exclude any reference to the conviction.

We disagree that the conviction here was not a crime involving dishonesty or false statement.[4]

Pennsylvania courts have indicated that perjury, bribery, burglary, criminal trespass, larceny, theft, retail theft, unauthorized use of a motor vehicle, and theft by receiving stolen property are crimes involving dishonesty or false statement. Conversely, statutory rape, aggravated assault, disorderly conduct, driving while under suspension, resisting arrest, fornication, pandering, prostitution, corrupting the morals of a minor, deviate sexual intercourse, and assault with intent to kill and murder do not constitute crimes of dishonesty or false statement.

Leonard Packel and Anne Poulin, *Pennsylvania Evidence* § 609 (1987 and Supp.1994) (footnotes omitted). This summary does not contain drug violations in either category, and the decisions pertaining to whether an offense is *crimen falsi* are few in number. In 1981 our Court held in *Commonwealth v. Candia,* 286 Pa.Super. 282, 428 A.2d 993 (1981), that the

3. We note that in *Russell,* the court expressly adopted the *Randall* rule but, in dicta, attempted to apply Federal Rule of Evidence 609, which permits the use of non *crimen falsi* crimes after the court balances the probative value against the prejudicial effect. We are not bound to follow this dicta and adhere to our Supreme Court's holding that only *crimen falsi* convictions may be admitted to impeach a witness' credibility.

4. Furthermore, as we stated above, because there was no dispute about the conviction being less than ten years old, the court should not have performed a balancing of interests here.

offense involved was not *crimen falsi*. We are unable to determine from the opinion precisely what the offense was, but the appellant therein admitted to having been convicted on a marijuana charge. *Candia* has been generally cited for the proposition that drug convictions are not *crimen falsi*. See *Commonwealth v. Rhodes*, 405 Pa.Super. 570, 592 A.2d 1360 (1991); *Commonwealth v. Hayes*, 314 Pa.Super. 112, 460 A.2d 791 (1983) (dissenting opinion, Spaeth, J.); *Commonwealth v. Vickers*, 260 Pa.Super. 479, 394 A.2d 1027 (1978). When taken on their particular facts, however, they are of little assistance under our present facts, because the crimes there involved the possession or sale of drugs.

In a federal decision of the Second Circuit Court of Appeals, *United States v. Hayes*, 553 F.2d 824 (1977), *cert. den.*, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143,[5] the court held that importation of cocaine was not clearly *crimen falsi*, but could be if the particular facts demonstrated that the importation involved false written or oral statements on customs forms. *Id.* at 827–828. In weighing the effect on credibility of various drug violations, the court held that smuggling "ranks relatively high on the scale of veracity-related crimes," *Id.* at 828, but that mere narcotics possession would be less highly ranked on that same scale. *Id.* The court also held that the sale of narcotics might fall between the two. *Id.* at n. 8. In the Second Circuit's analysis of Federal Rule of Evidence 609(a)(2) (use of conviction involving dishonesty or false statement), the court held that, because the use of *crimen falsi* convictions was not discretionary, "Congress would define narrowly the words 'dishonesty or false statement,' which, taken at their broadest, involve activities that are part of nearly all crimes. Hence Congress emphasized that the second prong was meant to refer to convictions 'peculiarly probative of credibility,' such as those for 'perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen*

---

**5.** Although we recognize that decisions of the circuit courts are not binding precedent, and the *Hayes* decision is based upon the federal rules of evidence, the analysis is well-reasoned and helpful to our analysis.

*falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.' Conf.Rep. No. 93–1597, 93d Cong., 2d Sess. 9, reprinted in [1974] U.S.Code Cong. & Ad.News 7098, 7103." *Id.* at 827 (footnote omitted).

The list of crimes contained above bears some distinct resemblance to the list of crimes which Pennsylvania has also determined to be *crimen falsi.* Given this analytical background, we turn now to the crime involved in the present case. Appellant was convicted, essentially, of writing prescriptions for a controlled substance to himself, knowing he had a chemical dependency problem. The crime itself involves making a false statement because it necessarily involves the falsification of a prescription by a practitioner representing that it is not for a person who is chemically dependent. Because of the very nature of the offense committed, we must find that the crime is *crimen falsi* and, because the conviction is admitted to have occurred within ten (10) years of the matter involved, evidence concerning it should have been admitted at trial.[6] It was error, therefore, for the trial court to have excluded the evidence. Likewise, it was error, under *Russell v. Hubicz, supra,* and *Commonwealth v. Randall, supra,* for the court to have found that the crime was not *crimen falsi* and to have therefore performed a balance between probative value and prejudicial effect. The evidence was automatically admissible. Furthermore, because the testimony of Appellant concerning both his course of treatment under the negligence claim, and his business practices regarding whether or not he obtained a valid informed consent from Mrs. Allen, bear on the credibility of Appellant, the grant of a

6. We note, however, that

evidence of a prior conviction, if introduced solely to impeach a defendant's credibility, should "... be limited to the name, time and place and punishment received in the prior offense, in order to minimize the potential prejudice and distraction of issues already inherent in the mention of prior offenses." *Commonwealth v. Albright,* 226 Pa.Super. 506, 510, 313 A.2d 284, 286 (1973).

*Commonwealth v. Jones,* 250 Pa.Super. 98, 108, 378 A.2d 471, 477 (1977). *See also Commonwealth v. Oglesby,* 274 Pa.Super. 586, 591, 418 A.2d 561, 564 (1980).

new trial must extend to both the issue of informed consent and negligence, permitting introduction of the permissible evidence concerning Appellant's prior conviction.

Order affirmed and case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.