664 A.2d 999

**COMMONWEALTH of Pennsylvania**

v.

**Patrick A. VITALE, Appellant.**

Superior Court of Pennsylvania.

Argued May 9, 1995.

Filed Aug. 23, 1995.

44

George Goldstein, Philadelphia, for appellant.

Theodore R. Racines, Assistant District Attorney, Allentown, for Commonwealth, appellee.

Before OLSZEWSKI, HUDOCK and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

Patrick Vitale appeals his judgment of sentence following a jury trial for conspiracy to possess cocaine and conspiracy to possess cocaine with intent to deliver. He was sentenced to

three-to-ten years incarceration. Post-trial motions were denied by the Honorable Carol K. McGinley. He now raises the following five claims on appeal:

(1) An expert witness's interpretation of coded words impermissibly usurped the province of the jury.

(2) It was error for the trial court to allow appellant to be impeached with his conviction for federal income tax evasion.

(3) The jury should have been charged on mutually inconsistent inferences.

(4) The affidavit used to procure the wiretap was statutorily deficient.

(5) A recorded conversation between appellant's wife and one of the co-conspirators should not have been admitted into evidence.

Appellant was one of nine co-defendants arrested following an extensive investigation by the Pennsylvania State Police into illegal drug activity. The State Police initiated five wiretaps in the course of their investigation. Messages were intercepted from calls from phones listed in the names of either Robert Kratzer or Tony DeJesus, two of appellant's co-conspirators. A total of 1,557 phone calls were intercepted. Of these, the jury heard 106 conversations. Thirteen involved talks between Kratzer and appellant or Kratzer leaving messages on appellant's answering machine. One involved a phone call between Kratzer and appellant's wife.

Appellant was convicted primarily as a result of his phone conversations with Kratzer. At trial, State Trooper Joseph Vasquez [1] was qualified as an expert witness in interpreting jargon employed by the conspirators, as it was presumed that the lay juror might not have a reference for many of the phrases used by appellant and his co-conspirators.

Appellant first claims that as the language used by the defendants in the tapes was ordinary and quotidian, the admission of much of Trooper Vasquez's testimony was error.

---

**1.** Trooper Vasquez's name appears in the record as both Vasquez and Vazquez.

Arguing that the jurors' own experiences would have enabled them to decode the questioned excerpts by themselves, appellant maintains that Trooper Vasquez's testimony improperly usurped the fact-finding province of the jury. We disagree.

Appellant does not contest Vasquez's expertise. Moreover, appellant admits that "[c]oded conversation utilizing language which is intended to prevent the uninitiated from understanding it is subject to interpretation by an expert." Appellant's brief at 9. Rather, appellant argues that much of what was interpreted was common knowledge.

■ "Expert testimony is readily admissible to interpret and explain the use of code words and the meaning of certain language used in drug trafficking." *Commonwealth v. Riffert*, 379 Pa.Super. 1, 21, 549 A.2d 566, 576 (1988) (quoting *United States v. Dawson*, 556 F.Supp. 418, 423 (E.D.Pa.1982), *affirmed*, 727 F.2d 1101 (3d Cir.1984)) (citations omitted), *allocatur denied*, 522 Pa. 602, 562 A.2d 825 (1989). We have held that such testimony does not invade the province of the trier-of-fact. *Id.* Moreover, the determination of whether to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed absent a clear abuse of that discretion. *Commonwealth v. Scarfo*, 416 Pa.Super. 329, 383, 611 A.2d 242, 269, *allocatur denied*, 535 Pa. 633, 631 A.2d 1006 (1992).

Appellant cites to *Commonwealth v. Carter* to support the proposition that Trooper Vasquez's testimony was prejudicial. 403 Pa.Super. 615, 589 A.2d 1133, *allocatur denied*, 528 Pa. 621, 597 A.2d 1151 (1991). *Carter* is inapposite, however, as the testimony in question in that case did not involve linguistic decoding. Rather, the officers in *Carter* stated that the defendant was "dealing narcotics." *Id.* at 617, 589 A.2d at 1134. The police in *Carter* were interpreting their visual observations for the jury. Here, Vasquez was interpreting linguistic codes. He was a properly qualified expert; such testimony was admissible.

■ Appellant recites sixty-one passages of testimony he believes were prejudicial. A review of that testimony reveals

that in twenty-four passages Vasquez was decoding jargon that referred to the amount of drugs. *E.g.,* N.T. 9/23/91 at 42–43 (stating that "I'll give you another one" referred to one ounce of cocaine). In eighteen the jargon or slang interpreted referred to price. *E.g., id.* at 53 (stating that "I'm at eight" meant eight hundred dollars). Fourteen pieces of testimony explained words referring to cocaine and/or the quality of cocaine. *E.g., id.* at 68–69 (interpreting "guarantee" to mean cocaine). Three times Vasquez interpreted words describing the drug business. *E.g., id.* at 78 (decoding "[T]hese people are just adding up," to mean that the cocaine Kratzer purchased was almost completely depleted and his clients were asking for more). Three interpretations were of slang for drug paraphernalia. *E.g., id.* at 43 (stating that "little pieces of plastic" referred to either a foreign substance inside the cocaine or a person who poorly cut the cocaine).[2] We find that in all of these, Vasquez was decoding slang, the jargon of the drug underworld, so that the jury would know to what the tapes referred. It was still the jury's obligation to decide if recorded conversations in which appellant was repeatedly heard to refer to drug transactions indeed constituted an intent to actually sell drugs.[3] We therefore find that the admission of Vasquez's testimony was not an abuse of discretion.

**2.** One piece of challenged testimony referred to both amount and price.

**3.** The expert witness provides for the court what the late General Semanticist and United States Senator S.I. Hayakawa called informative connotations, which are the definitions of a term (what it is and is not) and its extensional denotation (the physical referent). See S.I. Hayakawa, *Language in Thought and Action* (4th ed. 1978) for a discussion of the meaning of words. In contrast, it would be error for the expert witness to provide for the jury the affective connotations of a word. These are "the aura of personal feelings [the word] arouses." *Id.* at 64. The study of affective connotations has traditionally included the evaluative dimension of a word. *See* David K. Berlo, *The Process of Communication* (1960) 296–7 (citing the classic study of connotations by Charles E. Osgood, George J. Suci, and Percy Tannenbaum in *The Measurement of Meaning* (1957)). We find no evidence in the record that Vasquez attempted to improperly evaluate the language on the tapes for the jurors; rather, he provided definitions for otherwise vague and ambiguous terms according to the lexicon of the linguistic community in which those words were uttered. *See* Hayakawa at 50–58 for a discussion of the importance of context in understanding language.

50

▉ Appellant claims in his second issue that a conviction for federal income tax evasion is not a *crimen falsi*, and therefore it should not have been available to the prosecutor for impeachment purposes.[4] We disagree. Crimes involving dishonesty or a false statement which occurred within ten years of the trial date are *per se* admissible. *Commonwealth v. Randall*, 515 Pa. 410, 415–17, 528 A.2d 1326, 1329 (1987); *see also Allen v. Kaplan*, 439 Pa.Super. 263, 268–70, 653 A.2d 1249, 1252 (1995); *Commonwealth v. Young*, 432 Pa.Super. 318, 320–22, 638 A.2d 244, 246 (1994); *Russell v. Hubicz*, 425 Pa.Super. 120, 133–35, 624 A.2d 175, 182, *allocatur denied*, 535 Pa. 670, 634 A.2d 1117 (1993).

▉ Crimes such as rape, resisting arrest, prostitution, and assault with intent to kill are not crimes involving dishonesty or false statement. *Kaplan* at 270–72, 653 A.2d at 1253. Crimes such as theft, perjury, bribery, criminal trespass, and unauthorized use of a motor vehicle, however, have been held by Pennsylvania courts to be *crimen falsi*. *Id.* In addition, we have indicated that even if a crime would not in and of itself be *crimen falsi*, we would consider it as such if it was committed in part through the use of false written or oral statements. *Id.* (citing *United States v. Hayes*, 553 F.2d 824 (2nd Cir.), *cert. denied*, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977)).

▉ Appellant cites to *Cree v. Hatcher* for the proposition that appellant's income tax conviction could not have been used to impeach his testimony. 969 F.2d 34 (3rd Cir.), *cert. granted in part sub nom. Hatcher v. Valcarcel*, 506 U.S. 984, 113 S.Ct. 490, 121 L.Ed.2d 429, *and cert. denied in part*, —— U.S. ——, 113 S.Ct. 1147, 121 L.Ed.2d 577 (1992). In *Cree* the

4. Appellant never testified, but did make a motion *in limine* for the court to decide on the admissibility of appellant's prior conviction. Appellee argues that appellant's failure to testify should preclude him from raising this claim. The Commonwealth cites to *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) in support of its claim that appellant's failure to testify makes any appellate ruling on this matter speculative. *See* appellee's brief at 21. This Court has specifically rejected *Luce* in cases such as the one *sub judice*. *Commonwealth v. Richardson*, 347 Pa.Super. 564, 500 A.2d 1200 (1985), *allocatur denied*, 525 Pa. 644, 581 A.2d 571 (1990).

United States Court of Appeals for the Third Circuit was addressing the Federal Rules of Evidence. That decision is therefore not binding on this Court. *Kaplan*, 439 Pa.Super. at 271 n. 5, 653 A.2d at 1253 n. 5; *see also Commonwealth v. Richardson*, 347 Pa.Super. 564, 568–70, 500 A.2d 1200, 1203 (1985), *allocatur denied*, 525 Pa. 644, 581 A.2d 571 (1990).[5]

Moreover, in *Cree* the issue was whether or not an expert witness could be impeached by his conviction of the misdemeanor of willful failure to file a federal income tax return, in violation of 26 U.S.C. § 7203. *Cree* at 36. In that case the expert doctor failed to pay an estimated tax. The Federal Court of Appeals held that there was no element of deceit, untruthfulness, or falsification in that crime, as there was no requirement that a defendant accused of violating § 7203 acted with an evil purpose to conceal tax liability. *Id.* at 37.

In the case *sub judice*, appellant was not convicted for willful failure to report information or pay taxes, but for an attempt to evade or defeat tax. 26 U.S.C. § 7201. The former is a lesser included offense of the latter. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). Section 7201 states that "any person who willfully attempts in any manner to evade or defeat any

**5.** We recognize a federal court's authority to interpret federal law. *See Nobers v. Crucible, Inc.*, 431 Pa.Super. 398, 406, 636 A.2d 1146, 1150 ("[W]here the Third Circuit has spoken on a federal question, the ultimate answer to which has not yet been provided by the United States Supreme Court, it is appropriate that we follow the Third Circuit's decision."), *allocatur denied*, 537 Pa. 665, 644 A.2d 1201 (1994). The issue before this Court, however, is not a *per se* interpretation of 26 U.S.C. § 7201 (federal income tax evasion). Rather, we must decide whether a violation of this federal statute is a crime of dishonesty as defined by the laws of the Commonwealth. The determination of a federal court applying a federal statute within the context of a discussion of the Federal Rules of Evidence, therefore, might be persuasive, but it is by no means binding. *Cf. Canonsburg General Hosp. v. Unemployment Compensation Bd. of Review*, 156 Pa.Commw. 533, 542 n. 5, 628 A.2d 503, 507 n. 5 (1993) ("[T]he status of strikers as determined by federal labor law is not binding or even necessarily relevant with regard to state unemployment law since the different laws have different policies and involve different rights."), *aff'd*, 540 Pa. 531, 658 A.2d 790 (1995).

tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony." 26 U.S.C. § 7201. The United States Supreme Court has stated that "the elements of § 7201 are willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax. In comparison, § 7203 makes it a misdemeanor willfully to fail to perform a number of specified acts at the time required by law...." *Sansone*, 380 U.S. at 351, 85 S.Ct. at 1010, 13 L.Ed.2d at 888 (citations omitted).

▮▮▮▮▮▮ Evasion is the "act of eluding, dodging, or avoiding, or avoidance by artifice." Black's Law Dictionary 497 (5th ed. 1979). To evade paying taxes is to cheat the government. A violation of § 7201 means that a defendant knowingly and willfully attempted "to defraud the Government of its tax money." *McCarthy*, 394 U.S. at 470, 89 S.Ct. at 1173, 22 L.Ed.2d at 427 (footnote omitted). Being convicted of willfully cheating the government is certainly a type of *crimen falsi* as contemplated within *Randall* and its progeny. The trial court was correct to rule that appellant, had he taken the stand, could have been impeached by his prior conviction.

▮▮▮▮ In his third issue, appellant raises the claim that the jury should have been given the following charge:

Where two equally reasonable and mutually inconsistent references can be drawn from the same set of circumstances, the jury cannot guess which inference it will adopt, especially when one of the two guesses might result in depriving the defendant of his liberty. The defendant is entitled to an acquittal if guilt is not the only reasonable interpretation of the facts.

Appellant gleans this charge from the seminal case of *Commonwealth v. Woong Knee New*, 354 Pa. 188, 47 A.2d 450 (1946), where our Supreme Court held that "[a]n accused is entitled to an acquittal of the crime charged if his guilt is not the only reasonable interpretation of which the facts adduced against him are susceptible." *Id.* at 195, 47 A.2d at 455. Appellant contends that since both he and Kratzer were in the

construction business, some of the words decoded by Vasquez, such as "shingles" and "roof," could have just as easily referred to home building as cocaine.

■■■■ *New* refers to a challenge to the sufficiency of the evidence. If appellant believes that the evidence was insufficient to convict him, then his recourse should have been to seek a dismissal, have the verdict set aside, move to arrest judgment in a post-trial motion, or raise a sufficiency-of-the-evidence claim on appeal. He does not do so because the evidence clearly was sufficient to convict.

We have settled the issue of using *New* as a basis of a jury charge in *Commonwealth v. Adams*, where we stated:

> We have examined *New*, a landmark case.... As we view the language, it sets standards for trial judges to follow in deciding whether to submit a case to the jury or direct a verdict. See *Commonwealth v. New, supra*, at 221, 47 A.2d at 450. In *Commonwealth v. Martin*, 479 Pa. 63, 387 A.2d 835 (1978) similar language was referred to as an "evidentiary proposition." To submit the language as quoted to a jury would confuse persons unlearned in the law, and perhaps many who are supposed to be learned. Circumstantial evidence "is sufficient if the circumstances are consistent with criminal activity *even though they might likewise be consistent with innocent behavior.*" (Emphasis supplied). *Commonwealth v. Moore*, 226 Pa.Super. 32, 34, 311 A.2d 704, 705 (1973).

273 Pa.Super. 484, 486, 417 A.2d 751, 752 (1979) (*per curiam* ).

[14] Appellant argues in his fourth claim that the wiretap should not have been used to collect evidence, as the Commonwealth failed to show that alternative investigative means had been tried and failed, or would be unsuccessful if tried. *See* 18 Pa.C.S.A. § 5709(3)(vii). "A condition precedent to the issuance of an order authorizing an intercept is a determination by a judge of the Superior Court that 'normal investigative procedures with respect to such offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ....' 18 Pa.C.S.

§ 5710(a)(3)." *Commonwealth v. Doty,* 345 Pa.Super. 374, 395, 498 A.2d 870, 880 (1985), *cert. denied,* 479 U.S. 853, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986). "[This] requirement also suggests that a wiretap should not be employed as the initial step in a police investigation." *Id.* (citations omitted). "However, the Commonwealth is not required to show that all other investigative methods have been exhausted." *Id.* at 395, 498 A.2d at 881 (citations omitted).

In this instance, the Commonwealth used the following investigative measures: undercover infiltration, surveillance, execution of a search warrant, telephone records, and pen registers. That these techniques were ultimately inadequate was the result of the clandestine nature of co-defendants' activities. One confidential informant, for instance, was unsuccessful in both learning the source of Kratzer's cocaine and in having an undercover police officer introduced to Kratzer. Kratzer told this source never to bring anyone with him. N.T. 5/1/91 at 37. Moreover, one State Trooper at the suppression hearing testified to the logistical problems with maintaining a visual surveillance of Kratzer's home. *Id.* at 32. DeJesus' activities were equally difficult to identify without the assistance of the wiretaps.[6] We are convinced that the wiretaps were necessary to maintain the efficacy and integrity of the investigation, and were lawfully employed.

In his final argument, appellant maintains that a recorded conversation between his wife and Kratzer should not have been admitted into evidence. Appellant alleges that this amounted to wife's testifying against appellant, a violation of 42 Pa.C.S.A. Section 5913.[7] We disagree.

The communication between wife and Kratzer was obviously not a confidential communication between spouses, and thus could not be excluded on that ground. *See* 42 Pa.C.S.A. § 5914; *see also Commonwealth v. Newman,* 534 Pa. 424, 633 A.2d 1069 (1993). We recognize, however, that wife's conver-

6. DeJesus proved to be Kratzer's source.

7. Section 5913 states in relevant part that "[e]xcept as otherwise provided in this chapter, in a criminal proceeding husband and wife shall not be competent or permitted to testify against each other."

sation might be construed as an extrajudicial admission; thus we would prohibit its admission into evidence with the same force as we would in-court testimony. *Commonwealth v. Easley,* 341 Pa.Super. 381, 393–94, 491 A.2d 868, 874 (1985) (Popovich, J., concurring).

During the phone call in question, Kratzer left a message on appellant's answering machine, saying, "I had something good, but you're not around." N.T. 9/23/91 at 66. Appellant's wife picked up the phone and told Kratzer to come over, but to make sure he was alone. *Id.*

 We find wife's testimony too vague to be an admission. What the conversation did show, however, was that Kratzer was bringing something over for appellant. This is indicated by Kratzer's testimony, not wife's. As such, it is admissible because it is the admission of one co-conspirator uttered in the furtherance of a conspiracy. *See Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980). If any portion of the transcript should have been redacted to exclude wife's conversation, such an omission was harmless error, since appellant's participation in the conspiracy was established beyond a reasonable doubt through the conversations with Kratzer. *See Commonwealth v. Jones,* 540 Pa. 442, 446–447, 658 A.2d 746, 749 (1995) (stating that error is harmless when the evidence of guilt is overwhelming and the error insignificant so that it is clear beyond a reasonable doubt that the error did not contribute to the verdict); *see also Evans* at 92–94, 413 A.2d at 1029 (holding that admission of evidence of activity not done in furtherance of the conspiracy was harmless error where defendant's participation was fully established by the testimony of another co-conspirator).

In sum, it was not an abuse of discretion for the trial court to admit the expert testimony of Trooper Vasquez; appellant could have been properly impeached with his conviction for evading and/or defeating federal taxes had he taken the stand; the trial court was correct in refusing to charge the jury on mutually inconsistent inferences; the wiretaps were proper;

56

and, Kratzer's conversation with appellant's wife was properly admitted.

Judgment of sentence affirmed.