OXFORD PRESBYTERIAN
CHURCH, Appellant,

v.

WEIL–McLAIN COMPANY, INC.,
American Manufacturers Mutual In-
surance Company, Commonwealth of
Pennsylvania Department of Labor
and Industry, Thomas W. Hindman
Plumbing, Heating & Air Condition-
ing, Jack's Plumbing & Heating, Inc.,
SICO Oil Company, South Penn Gas
Company, Al Slack Gas Company.

Oxford Presbyterian Church

v.

Weil–McLain Company, Inc., American
Manufacturers Mutual Insurance
Company, Commonwealth of Pennsyl-
vania Department of Labor & Indus-
try, Thomas W. Hindman Plumbing,
Heating & Air Conditioning, Jack
Plumbing & Heating, Inc., Sico Oil
Company, South Penn Gas Company,
Al Slack Gas Company.

Appeal of Sico Oil Company, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 9, 2002.
Filed Jan. 15, 2003.

Richard W. Yost, Philadelphia, for Oxford Presbyterian Church.

Thomas P. Bracaglia, Plymouth Meeting, for Sico Oil Company.

Before: HUDOCK, FORD ELLIOTT, and OLSZEWSKI, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 This case had its genesis in May of 1989 when a fire destroyed a 134-year-old church in Chester County. The church settled its claim against its insurer, which then sought to discover the cause of the fire. Upon determining that the fire must have started in the church basement in the wood joists above one of the boilers that supplied the church with heat, the insurer filed subrogation claims in 1991 against every company or individual involved in maintaining or repairing the boilers. By 1996, only two defendants remained: SICO Oil Company ("SICO") and Thomas W. Hindman Plumbing, Heating and Air Conditioning ("Hindman").

¶ 2 At the close of discovery, both SICO and Hindman filed motions for summary judgment. The trial court, the Honorable Lawrence E. Wood, granted SICO's motion in 1996 and dismissed it from the case. The court then granted Hindman's motion in 1998, thus bringing to an end all claims against all parties. The church filed an appeal from the grants of summary judgment to both SICO and Hindman, however, and this court reversed by memorandum and order filed April 8, 1999. *Oxford Presbyterian Church v. Weil McLain Company, Inc., et al.,* No. 794 Philadelphia 1998 unpublished memorandum, 738 A.2d 1063 (Pa.Super. filed April 8, 1999). This court based its reversal on trial court error in concluding that neither SICO nor Hindman owed the church a legal duty, an issue this court concluded should have gone to the jury.

¶ 3 On remand, the case was tried to a jury with Judge Wood presiding and with SICO the only remaining defendant. SICO had, however, filed cross-complaints against Hindman and South Penn Gas Company, but neither actively participated in the trial. At the close of the evidence, the jury found that SICO had breached its duty to the church, but that the breach was not the cause of the fire. The jury therefore returned a verdict in favor of SICO. Following the denial of its motions for a new trial or j.n.o.v., the church timely filed an appeal and SICO filed a cross-appeal. For the reasons that follow, we affirm the judgment entered in favor of SICO and quash SICO's cross-appeal.

¶ 4 The church raises the following issues:

1. Whether the Trial Court erred in permitting SICO's experts to testify as to matters beyond the scope of their reports and in admitting the deposition testimony of Robert Brown as to the origin of the fire, even though Mr. Brown was not qualified as an expert.

2. Whether the Trial Court erred in excluding all opinion testimony of Oxford's experts, Thomas Cocchiola and Ronald Durr, in excluding the Chester County Fire Marshal's report as to the cause and origin of the fire, in significantly restricting the testimony of Corporal Douglas Brose as to the cause and origin of the fire and in refusing to permit John Quinn to testify that his opinion was consistent with the Chester County Fire Marshal[ ] and the Pennsylvania State Police.

3. Whether the Trial Court erred in giving adverse inference instructions with regard to a 'missing witness'

and the loss of some evidence of the fire scene.

4. Whether the Trial Court erred in requiring the jury to determine whether SICO's breach of duty was 'the cause', rather than a substantial contributing factor in bringing about the fire, as set forth in Question 2 of the Verdict Slip.

Appellant's brief at 5. In its argument section, the church divides several of these issues into sub-issues, which we will address separately.

¶ 5 "A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant." *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 304 (Pa.Super.1999), citing *Davis v. Berwind Corp.*, 547 Pa. 260, 690 A.2d 186 (1997) (other citation omitted).

¶ 6 All of the church's issues except its last are based on the trial court's allegedly erroneous evidentiary rulings or jury instructions. If the trial court has committed an error in its evidentiary rulings, and if the error caused harm to the complaining party, then "[b]ased upon such showing, our only remedy is to grant a new trial." *Collins v. Cooper*, 746 A.2d 615, 620 (Pa.Super.2000) (citation omitted). " 'When improperly admitted testimony may have affected a verdict, the only correct remedy is the grant of a new trial.' " *Id.*, quoting *Bucchianeri v. Equitable Gas Co.*, 341 Pa.Super. 319, 491 A.2d 835, 838–839 (1985) (citation omitted). Likewise, "Error in a jury charge may provide the basis for a new trial if it is shown that the instruction may have been responsible for the verdict." *Kovach v. Solomon*, 732 A.2d 1, 4 (Pa.Super.1999) (citations omitted). As a result, we hold that the trial

court did not err when it denied the church's motion for a j.n.o.v.

¶ 7 In contrast, "Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case." *Id.*, citing *Brown v. Philadelphia College of Osteopathic Medicine*, 449 Pa.Super. 667, 674 A.2d 1130 (1996). "An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or illwill." *Pilon v. Bally Engineering Structures*, 435 Pa.Super. 227, 645 A.2d 282, 285 (1994), *appeal denied*, 539 Pa. 680, 652 A.2d 1325 (1994), *rejected on other grounds in Shope v. Eagle*, 551 Pa. 360, 710 A.2d 1104 (1998). In deciding whether the trial court erred or abused its discretion, "we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict." *Buckley*, 744 A.2d at 305, citing *Robertson v. Atlantic Richfield Petroleum Products Co.*, 371 Pa.Super. 49, 537 A.2d 814 (1987), *appeal denied*, 520 Pa. 590, 551 A.2d 216 (1988). "Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed." *Id.*, citing *Johnson v. Hyundai Motor America*, 698 A.2d 631 (Pa.Super.1997), *appeal denied*, 551 Pa. 704, 712 A.2d 286 (1998). With these principles in mind, we now consider the propriety of the trial court's decision to deny the church the relief it requested.

¶ 8 As noted *supra*, most of the church's issues are based on the trial court's allegedly erroneous evidentiary rulings. "Evidentiary rulings are committed

to the sound discretion of the trial court, and will not be overruled absent an abuse of discretion or error of law." *Takes v. Metropolitan Edison Co.,* 440 Pa.Super. 101, 655 A.2d 138, 145 (1995) (*en banc* ), *reversed in part on other grounds,* 548 Pa. 92, 695 A.2d 397 (1997). "In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party." *Collins,* 746 A.2d at 619, citing *Romeo v. Manuel* 703 A.2d 530, 532 (Pa.Super.1997) (other citations omitted). " 'Appellant must therefore show error in the evidentiary ruling and resulting prejudice, thus constituting an abuse of discretion by the lower court.' " *Id.* at 620, quoting *Romeo, supra.*

■ ¶ 9 The church first claims trial court error in allowing SICO's experts John Allen, Ph.D., and Edward Keegan to testify beyond the fair scope of their expert reports. *See* Pa.R.Civ.P. 4003.5, 42 Pa.C.S.A. We have carefully reviewed Dr. Allen's two reports and his testimony. (Expert reports of John Allen, Ph.D., 10/9/96 and 9/15/00; notes of testimony, 1/25/01 at 131–178.) Our review indicates that Judge Wood thoughtfully reviewed the reports from the bench while Dr. Allen testified, and sustained numerous objections to Dr. Allen's testifying beyond the scope of his reports. Judge Wood allowed Dr. Allen to "flesh out" his reports with some mathematical calculations and sketches to aid the jury in understanding why he believed it was impossible for the fire to have started in the manner the church alleged. None of this testimony was beyond the fair scope of Dr. Allen's reports, however, nor could it have result-

ed in unfair surprise, as the reports clearly indicated Dr. Allen's disagreement with the church's theory that pyrolysis caused the fire.[1] *See Brady v. Ballay, Thornton, Maloney Medical Assoc., Inc.,* 704 A.2d 1076, 1082 (Pa.Super.1997) (finding no reversible error in allowing an expert to testify beyond the fair scope of his report where the testimony did not prevent the Bradys from preparing a meaningful response or mislead them into preparing an inappropriate response), *appeal denied,* 555 Pa. 738, 725 A.2d 1217 (1998).

¶ 10 The church next claims trial court error in allowing Edward Keegan to testify at all because his testimony was allegedly cumulative of Dr. Allen's. Keegan was a firefighter and, like Dr. Allen, was called to testify as a cause and origin expert. The church therefore relies on Pa.R.E. 403 to support its argument that the court should not have allowed Keegan to testify because his testimony merely bolstered Dr. Allen's testimony and was therefore not only cumulative but prejudicial to the church.

■ ¶ 11 Our review of Keegan's testimony reveals, however, that it went into areas Dr. Allen did not explore because Keegan testified from the perspective of a firefighter. For example, Keegan testified that a state trooper called to the fire scene noticed beading on an electrical wire in the organ room. According to Keegan, this meant that the wire still had electrical activity, an indication that the fire did not start in the boiler room where the electrical panel boxes were located, as there would have been no electricity above the boiler room. (Notes of testimony, 1/26/01 at 20.) In contrast, Dr. Allen's testimony, while also based in part on witnesses' ob-

---

1. Pyrolysis is a process by which wood is converted into a substance like charcoal, which can be readily ignited. For the process to occur, the wood must be exposed to heat over a prolonged period: the lower the temperature, the longer the exposure required for ignition. (Notes of testimony, 1/23/01 at 217–218; 1/25/01 at 159–173.)

servations, focused on discrediting the church's explanation from a scientist's perspective. *See Takes,* 655 A.2d at 145 (agreeing that the testimony of an expert with a Ph.D. in electrical engineering would not be cumulative of the testimony of a power station foreman because the scientist's testimony would carry greater weight).

¶ 12 We agree with the church, however, that Keegan may have testified outside the fair scope of his report in one instance; namely, when he testified that if the fire had started in the basement, people would not have been able to go into the first floor of the church to retrieve artifacts without wearing protective gear. (Notes of testimony, 1/26/01 at 17.) Nonetheless, we find no prejudice to the church because Dr. Allen testified to essentially the same thing when he noted that the people retrieving artifacts from the first floor did not smell smoke or see fire in that area, but saw fire up higher in the church. (Notes of testimony, 1/25/01 at 138–142.)

¶ 13 The church next claims trial court error in allowing SICO to read into the record the deposition testimony of Robert Brown, who had died before trial. According to the church, SICO improperly attempted to use Brown's deposition as additional expert testimony as to the cause and origin of the fire. Brown, a former volunteer firefighter who still kept a fire monitor at home, was one of the first people to arrive at the scene and took some photographs of the fire. We have read the portions of Brown's deposition that were read into the record and find that Brown testified as a fact witness, not an expert. (Notes of testimony, 1/25/01 at 43–97.)[2] Brown's expertise in fire fighting thus

went to the weight the jury might have given his observations.

¶ 14 The church next claims trial court error in limiting the testimony of two of its experts, Thomas Cocchiola and Ronald Durr, concerning SICO's breach of duty. Assuming for the sake of argument that the church is correct, we find no harm to the church because the jury returned a verdict finding that SICO breached its duty to the church. We therefore find no reversible error. *See Collins,* 746 A.2d at 619 ("In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party[ ]") (citations omitted).

¶ 15 Next, the church claims reversible error in refusing to allow its expert, John Quinn, to testify that his opinion as to the cause and origin of the fire was consistent with the opinion contained in the report of the Chester County Fire Marshal William Winters, who died before trial, and with the opinion of Pennsylvania State Police Trooper Brose.

¶ 16 The trial court indicated that it allowed Quinn to testify as to the facts contained in Winters' very sketchy report, but not as to the opinions contained therein because Winters was never subject to cross-examination as to his opinions. (Trial court opinion, 9/6/91 at 2.) Additionally, while the trial court agreed that an expert may offer opinions based on the reports of others, the court did not believe that the expert may "go so far as to just baldly read into the record the opinions of others, and then say he agrees with them." (*Id.* at 11.) We concur.

2. The trial court observed that portions of Brown's testimony were limited either by agreement or because they addressed cause and origin. (Notes of testimony, 1/25/01 at 97.)

¶ 17 In *Allen v. Kaplan,* 439 Pa.Super. 263, 653 A.2d 1249 (1995), *appeal granted in part,* 541 Pa. 640, 663 A.2d 692 (1995), this court affirmed the trial court's grant of a new trial where an expert was allowed to bolster his credibility by reading into the record the report of a non-testifying expert who had not been subject to cross-examination. Quoting *Cooper v. Burns,* 376 Pa.Super. 276, 545 A.2d 935 (1988), *appeal denied,* 522 Pa. 619, 563 A.2d 888 (1989), the *Allen* court observed, " '[b]y stating that [the reporting, non-testifying doctor] had confirmed [the testifying doctor's] diagnosis, [the testifying doctor] was permitted to corroborate his own medical opinion by improper hearsay.' " *Allen,* 653 A.2d at 1251, quoting *Cooper,* 545 A.2d at 941. As the *Allen* court further observed, "In providing expert testimony ... the expert witness may not act 'as a mere conduit or transmitter of the content of an extrajudicial source.' " *Id.,* quoting *Primavera v. Celotex Corp.,* 415 Pa.Super. 41, 608 A.2d 515, 521 (1992), *appeal denied,* 533 Pa. 641, 622 A.2d 1374 (1993).

¶ 18 As to State Trooper Brose's "opinion," the trial court had not allowed Corporal Brose to testify as to cause because he had not included such an opinion in his pre-trial report. (Notes of testimony, 1/23/01 at 42–43.) The court did, however, allow Trooper Brose to read part of his investigative report into the record. The court also allowed him extensive leeway to testify as to the potential causes the investigation eliminated, as well as to testify that the investigation revealed the fire burned upward and was not started in the lower areas by fall-down debris. (*Id.* at 44–62.) Quinn was then allowed to testify

that he was in complete agreement with Corporal Brose's testimony that the fire did not start in the organ fan motor and blower, and in general agreement with Corporal Brose as to the origin of the fire. (*Id.* at 217.) We thus fail to see any merit to this issue.

 ¶ 19 Next, the church claims trial court error in giving an adverse inference missing witness and spoliation charge to the jury. As previously noted, "Error in a jury charge may provide the basis for a new trial if it is shown that the instruction may have been responsible for the verdict." *Kovach,* 732 A.2d at 4 (citations omitted). "A charge to the jury which is not warranted by the evidence is ground for a new trial." *Id.* (citations omitted). We therefore agree with the church that the trial court erred when it agreed to charge the jury on adverse inference based solely on defense counsel's assertion that he planned to raise adverse inference in his closing argument. (Trial court opinion, 9/6/01 at 9.) If the evidence presented at trial did not support the charge, the trial court should not have given it. We turn, then, to the question whether the evidence supported the charge.[3]

 ¶ 20 "The general rule in Pennsylvania is that '[i]f a party fails to call a witness or other evidence within his or her control, the fact finder may be permitted to draw an adverse inference.' " *Id.* at 8, quoting Leonard Packel and Anne Poulin, Pennsylvania Evidence § 419 at 248, n. 1 (West's Pennsylvania Practice 1987, pocket part 1997, 1998 New Rules Supplement).

---

3. "This Court may affirm the order of the court below if the result reached is correct without regard to the grounds relied upon by that court." *C.B. ex rel. R.R.M. v. Com., Dept. of Public Welfare,* 567 Pa. 141, 143 n. 1, 786

A.2d 176, 178 n. 1 (2001), citing *Moorhead v. Crozer Chester Medical Center,* 564 Pa. 156, 159 n. 2, 765 A.2d 786, 787 n. 2 (2001) (other citations omitted).

'Generally, when a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference it would have been unfavorable.'

*Id.* at 8–9, quoting *Commonwealth v. Moore,* 453 Pa. 302, 305, 309 A.2d 569, 570 (emphasis deleted) (other citations omitted).

■■■ ¶ 21 In this case, the church claims that SICO never identified the witnesses who were only available to the church. Additionally, because most of the witnesses attended the trial, the church argues that they were equally available to SICO. We note, however, that in its closing argument, SICO identified the witnesses the church failed to call at trial as the members of the church property committee and the individuals responsible for maintaining the boiler. (Notes of testimony, 1/26/01 at 104–105.) These individuals are, in essence, parties to the lawsuit, not mere witnesses, thereby restricting SICO's equal access to them. *See* Pa. Rules of Professional Conduct 4.2–4.3, 42 Pa.C.S.A. Church counsel erased any doubt as to the status of these individuals in a letter dated June 9, 2000, threatening defense counsel with sanctions if they attempted any direct communication with the church members. (Memorandum of Law of Defendant SICO Oil Company, in Support of Answer to Plaintiff's Post Trial Motions, R. at 182 Exhibit F.) We therefore agree with SICO that it met the first requirement for an adverse inference instruction, the only basis upon which the church challenges the

instruction. The fact that the property committee members attended the trial did not render them equally available to both parties.[4] We also agree with SICO that the church did not suffer prejudice as a result of this instruction because the jury returned a verdict finding that SICO had breached its duty to the church, the only issue about which the property committee members were qualified to testify.

■■■ ¶ 22 The church also argues that the court erred in giving an adverse inference instruction regarding the destruction of physical evidence. According to the church, the trial court did not conduct a proper spoliation analysis, instead deciding to give the instruction solely because defense counsel planned to argue spoliation in his closing argument. (Trial court opinion, 9/6/01 at 10.) As we have already indicated, the question is not what an attorney plans to argue but whether the evidence supports the charge. *Kovach,* 732 A.2d at 4. Once again, then, we turn to the question whether the evidence presented at trial supported the charge.

¶ 23 As the church correctly observes, both this court and our supreme court have recently addressed the spoliation issue. The church relies in particular on this court's recent opinion in *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division,* 781 A.2d 1263 (Pa.Super.2001), *affirmed,* 811 A.2d 565 (Pa.2002), to support its position that the spoliation instruction was not proper under the facts of this case. *Mount Olivet* was a products liability action brought against the manufacturer of an immersion water heater Mount Olivet used to heat the water in its baptismal

---

4. We note additionally that Clyde Prigg, the church sexton and the only party the church called to testify, stated he was not responsible for or knowledgeable about maintenance of the church boilers; rather, the members of

the church property committee held that responsibility. (Notes of testimony, 1/23/01 at 130–131.) Their testimony would therefore have been both relevant and non-cumulative. *Kovach,* 732 at 8–9 (citation omitted).

font. According to Mount Olivet, an employee filled the baptismal font and turned on the heater. The water drained from the font but the heater did not shut off, thereby causing the bottom of the baptistry to catch fire. The fire then spread to other parts of the building, causing extensive damage in the stipulated amount of $981,000. Mount Olivet contended that the water heater was defectively designed because it lacked safety warnings or devices, such as a low-water shutoff or thermocouple. *Id.* at 1266.

¶ 24 Mount Olivet had preserved the water heater and all items related to the heater, but had destroyed the fire scene before bringing suit against Wiegand, thereby precluding Wiegand from determining alternative potential causes of the fire. *Id.* at 1268–1269. After conducting a spoliation analysis, the trial court denied Wiegand's request for a spoliation sanction. This court affirmed, relying in part on our supreme court's recent decision in *Schroeder v. Com., Dept. of Transportation,* 551 Pa. 243, 710 A.2d 23 (1998). *Id.* at 1269–1270, 710 A.2d 23. The *Schroeder* court adopted the Third Circuit Court of Appeals' approach to the spoliation of evidence, enunciated in *Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76 (3d Cir. 1994). *Schroeder, supra* at 251, 710 A.2d at 27. That analysis follows:

> In deciding the proper penalty for the spoliation of evidence, the Third Circuit found relevant (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party[;] and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct.

*Id.* at 250, 710 A.2d at 27, citing *Schmid,* 13 F.3d at 79.

¶ 25 In this case, the church, through its agents, apparently preserved the evidence salvaged from the fire scene at a storage facility. As noted *supra,* SICO was dismissed from this case in 1996 when the trial court granted its motion for summary judgment, and was not reinstated as a defendant until January 5, 2000. SICO then sought to obtain access to the physical evidence, and on March 31, 2000, the court ordered the parties to set a date within 60 days to inspect that evidence. The church did not comply with either the order or with SICO's continuing requests for access to the physical evidence. At the end of April 2000, however, the church's attorney informed SICO's counsel that the storage facility could not locate the church's twelve lots of evidence at any of its warehouses.

¶ 26 Applying the *Schroeder* court's analysis to these facts, we find that the church was responsible for preserving the evidence and was indirectly at fault for not ensuring its preservation. *See Travelers Cas. & Sur. Co. v. Castegnaro,* 565 Pa. 246, 252, 772 A.2d 456, 460 (2001) (holding that a principal is responsible for the acts or omissions of its agents, whether or not it is aware of or authorizes those acts or omissions, citing *Aiello v. Ed Saxe Real Estate, Inc.,* 508 Pa. 553, 559, 499 A.2d 282, 285 (1985)). While we agree with the church that there is no evidence of bad faith on its part, nevertheless, we find that the church bears some degree of fault for the loss of the physical evidence.

¶ 27 Next, we look to the degree of prejudice SICO suffered as a result. As the church and the trial court observe, the church made available to SICO photographs and videotapes of all of the physical evidence. Nevertheless, we must agree with SICO that looking at two-dimensional photographs of the church organ, the blower motor, the wiring, the kitchen appliances, the wood joists, and the kitchen subflooring, all of which the

church had preserved as relevant to determining the cause and origin of the fire, could not possibly provide the same degree of information that examining the three-dimensional objects would provide. SICO was therefore prejudiced by its inability more effectively to cross-examine the church's expert, and also by its inability to establish a separate theory of cause and origin.[5]

¶ 28 Finally, we note that the trial court employed the least restrictive sanction possible by giving the adverse inference instruction. As the *Schroeder* court observed, an adverse inference instruction is a common penalty for spoliation, whereas other sanctions, such as striking the plaintiff's expert testimony, are much more extreme. *Schroeder, supra* at 250, 710 A.2d at 26–27. We find no abuse of discretion in the trial court's decision to grant the instruction. *See Mount Olivet,* 781 A.2d at 1269 (opining that when reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion) (citations omitted).

¶ 29 In its final issue, the church claims the trial court erred in preparing the jury verdict slip by asking the jury to determine whether SICO's breach of duty caused the fire, rather than whether SICO's breach was a substantial factor in causing the fire. We agree with SICO and the trial court that the church did not preserve this issue for review on appeal because it did not challenge the verdict slip, ask the court to correct it, or object to

the court's charge on this basis despite the trial court's reading all of the questions to the jury during its charge. (Notes of testimony, 10/26/01 at 138–141.) *See Takes v. Metropolitan Edison Co.,* 548 Pa. 92, 98, 695 A.2d 397, 400 (1997) (holding that in order to preserve a trial objection for review, trial counsel is required to make a timely, specific objection during trial, citing *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 260, 322 A.2d 114, 117 (1974) (other citations omitted)).

¶ 30 We turn then to SICO's cross-appeal, in which it claims trial court error in denying its motion for a non-suit or directed verdict against the church. We agree with the church that this cross-appeal must be quashed because SICO is not an aggrieved party. *See* Pa.R.App.P. 501, 42 Pa.C.S.A. ("any party who is aggrieved by an appealable order ... may appeal therefrom[ ]"). As this court opined, "Generally, a prevailing party is not 'aggrieved,' and, therefore does not have standing to appeal an order which has been entered in his or her favor." *Clairton Corp. v. Chicago Title Ins.,* 438 Pa.Super. 488, 652 A.2d 916, 921 (1995), *appeal denied,* 542 Pa. 631, 665 A.2d 466 (1995).

¶ 31 Judgment in favor of SICO is affirmed. SICO's cross-appeal is quashed. Jurisdiction is relinquished.

---

**5.** The trial court did not allow Dr. Allen to testify as to his theory of cause and origin because his report only identified the probable cause of the fire, without indicating Dr. Allen's opinion to a reasonable degree of scientific certainty. (Notes of testimony, 1/25/01 at 174–175.) We agree with SICO that the trial court erred in this regard. *See Neal by Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103, 109–110 (1987) (holding that the burden of proving causation with the appropriate certainty rests upon the plaintiff; expert opinion rebuttal evidence, in contrast, does not necessarily qualify as proof and therefore need not meet the reasonable degree of certainty standard). Nevertheless, we find no prejudice to SICO, the jury having found that it was not responsible for the fire.